```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
```

EVELYNE M. SHATKIN and LINDA  §
SHIFFLETT                     §
                              §
V.                            §    ACTION NO. 4:06-CV-882-Y
                              §
UNIVERSITY OF TEXAS AT        §
ARLINGTON, JAMES D. SPANIOLO, §
GARY M. COLE, AMY J. SCHULTZ, §
and SELMA PERMENTER           §

ORDER PARTIALLY GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
AND REQUIRING ADDITIONAL BRIEFING REGARDING FREE-EXERCISE CLAIM

Pending before the Court is defendants Gary Cole, Amy Schultz, and Selma Permenter's Motion for Partial Summary Judgment [doc. #52], filed November 5, 2007. Having considered the motion, responses, and replies, the Court PARTIALLY GRANTS the motion.

## I. BACKGROUND

Plaintiffs Evelyne M. Shatkin and Linda Shifflett worked for defendant University of Texas at Arlington ("UTA") as administrative assistants in the development office. Defendant Gary M. Cole was the head of Shatkin and Shifflett's department. Defendant Amy J. Schultz was Shatkin's immediate supervisor, and defendant Selma Permenter was Shifflett's immediate supervisor.

In 2006, Shatkin, Shifflett, and Doug Maples, a co-worker, began discussing the personal difficulties that Maples was having with Evelyn Knight, another co-worker. Shatkin and Shifflett had also had difficulty working with Knight. Shatkin and Maples agreed that they would pray together about the situation. Maples told Shifflett about their plan to stay after work on March 3 to pray

for Knight.  Shatkin chose that date because she knew that Knight would be out of the office.

Shatkin, Shifflett, and Maples met at 5:30 p.m. on March 3 at Knight's cubicle.  Shatkin prayed for Maples's relationship with Knight and, according to her religious tradition, dabbed olive oil on the doorway to Knight's cubicle.[1]  Shatkin and Shifflett contend that the oil left no mark or otherwise damaged the cubicle.  Maples allegedly joined the ceremony by saying "Amen" and "Yes, Lord." Shifflett said "Amen."  Shatkin and Shifflett contend that they were not disruptive.

On March 7, Maples reported what had happened on March 3 to Permenter, his supervisor.  Maples told Permenter that Shatkin had been disruptive and that he had left after a few minutes because he was offended and uncomfortable.  After Permenter confirmed that something oily was on Knight's cubicle doorway, Permenter notified Schultz.  Permenter and Schultz decided that the matter should be reported to Cole.

On March 8, Cole, Permenter, and Schultz met with Shatkin and Shifflett about the prayer meeting.  Shatkin and Shifflett confirmed that they had prayed for Knight and rubbed oil on the cubicle doorway.  Cole, Permenter, and Schultz assert that Shatkin and Shifflett explained that they had prayed for Knight because she

---

[1]Shifflett believed that using the oil "invokes the presence of the Holy Spirit." (Pls.' App. at 265.)  Shatkin used the oil "to dedicate that area to the purposes and blessing of God." (Pls.' App. at 328.)

2

was "demonically oppressed." Cole told Shatkin and Shifflett that although their intentions were good, their conduct on March 3 had been inappropriate. Although they asked why Maples was not present, they assert that Cole would not answer and "castigate[d]" them about their conduct.

The human-resources department conducted an investigation of the incident that same day and concluded that Shatkin and Shifflett should be fired. Cole immediately gave Shatkin and Shifflett written notice that he intended to fire them because they "displayed conduct unbecoming a UT Arlington staff member, harassment of a fellow co-worker, and blatant disregard for the property of the university." (Defs.' App. at 2-6.) Cole relied on provisions in UTA's regulations, which essentially refer to unacceptable employee conduct and protecting UTA's assets.

On March 14, Shatkin and Shifflett wrote Cole requesting a religious accommodation. (Defs.' App. at 8-10.) The next day, Cole gave Shatkin and Shifflett letters reaffirming his decision to fire them because they had provided "no mitigating circumstances regarding your termination." (Defs.' App. at 12-14.) On March 23, Shatkin and Shifflett appealed in writing to Cole, Schultz, and Permenter, wherein they requested reinstatement with back-pay and a public apology. (Defs.' App. at 17-20.) The following day, Schultz denied Shatkin's appeal, and Permenter denied Shifflett's appeal. (Defs.' App. at 22-28.)

After exhausting their administrative remedies, Shatkin and

3

Shifflett filed suit against, among others, Cole, Schultz, and Permenter.  Shatkin and Shifflett raised claims against Cole, Schultz, and Permenter in their individual capacities for violating (1) their rights to freedom of speech and expression and (2)their rights to the free exercise of their religion.[2]  *See* 42 U.S.C.A. § 1983 (West 2003).

Individual defendants Cole, Schultz, and Permenter now move for partial summary judgment arguing they are entitled to qualified immunity on the claims brought against them in their individual capacities because Shatkin and Shifflett have not demonstrated that the defendants violated clearly established constitutional rights.

## II. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of

---

[2]Although Shatkin and Shifflett also raised an equal-protection claim, this claim was cast as an inhibition of their free-exercise rights. (Plfs.' 2nd Am. Comp. at 220.) Further, none of the parties separately argue an equal-protection claim in their summary-judgment filings; thus, the Court presumes Plaintiffs have abandoned this claim to the extent it may be distinct from their free-exercise claim.

4

an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### B. QUALIFIED IMMUNITY

Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the

litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The burden is on the plaintiff to show the inapplicability of the qualified-immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

When a court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, it must employ a three-part inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). First, the court must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See id.* If the court determines that he has, it must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendant's situation would have understood that his conduct violated that right. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).[3] This is a question of law. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). Finally, the court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged

---

[3]This second part of the test is often referred to as "objective reasonableness." Thus, "whether an official protected by qualified immunity may be held personally liable turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639(1987).

6

in the conduct that violated the clearly established right." *Conroe Creosoting*, 249 F.3d at 340. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v . Briggs*, 475 U.S. 335, 341 (1986).

## III. DISCUSSION

### A. THE GOVERNMENT AS EMPLOYER

In a constitutional analysis, as is required in this case, there is a significant difference between the government's acting as a lawmaker and its acting as an employer in managing its internal operations. *See Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2151 (2008). As an employer, the government has far broader powers than does the government as sovereign and enjoys wide latitude in managing its offices. *See Waters v. Churchill*, 511 U.S. 661, 671 (1994) (plurality op.); *Connick v. Myers*, 461 U.S. 138, 146 (1983). Constitutional review of government employment decisions rests on different principles than review of restraints imposed by the government as sovereign. *See Waters*, 511 U.S. at 674. Thus, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

Indeed, by making this distinction, as it must, the Court selects the prism through which it must review Shatkin's and

7

Shifflett's claims. Shatkin and Shifflett, unfortunately for their argument, consistently refer this Court to free-speech and free-exercise cases that solely involve a government's actions as sovereign. Thus, their arguments are, in the main, inapposite and misleading.

Regarding public employment, the Supreme Court has provided "two main principles":

> First, although government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context. Second, in striking the appropriate balance, we consider whether the asserted employee right implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer.

*Engquist*, 128 S. Ct. at 2152.

### B. FREEDOM OF SPEECH

Regarding Shatkin and Shifflett's allegations that their freedom-of-speech rights were violated, they must first allege the violation of a constitutional right in response to the qualified-immunity defense. Shatkin and Shifflett's complaint sets out Section 1983 claims that raise constitutional challenges to restrictions on their speech in the workplace. Thus, the threshold inquiry is whether their statements constituted speech protected by the First Amendment. *See Davis v. McKinney*, 518 F.3d 304, 310 (5th Cir. 2008). In the public-employment context, First Amendment speech rights are implicated only if a public employee's speech is made as a citizen and relates to a matter of public concern. *See*

8

*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007).

### 1. Role of Speaker

To determine whether a public employee made a statement as a citizen, a court must focus on the role the employee occupied when the statements were made. *See Davis*, 518 F.3d at 312. "Only when government penalizes speech that a plaintiff utters 'as a citizen' must the court consider the balance of public and private interests." *Id.* If the speech was made as part of the employee's official duties, it is not protected by the First Amendment. *See id.* at 312-313; *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). In other words, this Court must determine whether the statements were made pursuant to the plaintiffs' public employment or in their capacities as private citizens. *See Davis*, 518 F.3d at 312-13. "Official duties" are defined as "activities undertaken in the course of performing one's job." *Id.* at 313.

It is clear that Shatkin's and Shifflett's statements were not made as part of their official duties. The statements, although made in the workplace, were not made in the course of their jobs as administrative assistants. Further, the statements were made after work hours. (Pls.' 2nd Am. Comp. at 6.) There is nothing in the record to suggest that the statements were made pursuant to Shatkin's and Shifflett's public employment. Thus, Shatkin and Shifflett were acting as citizens when they made the statements.

## 2. Matter of Public Concern

This Court's next inquiry is into whether the statements Shatkin and Shifflett made as citizens were on a matter of public concern. If so, the statements are entitled to First Amendment protection. *See Davis*, 518 F.3d at 316.

The analysis of a public employee's speech uttered as a citizen requires a balancing between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968); *see also Connick*, 461 U.S. at 147 (clarifying public-employee speech protected only if on matter of public concern). Speech relates to a matter of public concern, and is thus subject to the aforementioned balancing test, if it contributes to an informed dialog in a democratic society or contributes informed opinions on important public issues. *See San Diego v. Roe*, 543 U.S. 77, 82-83 (2004); *Pickering*, 391 U.S. at 572. This must be determined by the content, form, and context of a given statement, as revealed by the entire record. *See Connick*, 461 U.S. at 147-48; *Davis*, 246 F.3d at 503-04.

The Court finds no evidence that the particular speech at issue regarded a matter of public concern. Instead, Shatkin's and Shifflett's prayer concerned their personal conflicts with Knight. There is no evidence that Shatkin's and Shifflett's statements were

made for any purpose other than altering their relationship with Knight. These statements did not contribute to a well informed public debate. (Pls.' Resp. at 8). Further, the content of the statements was "intensely personal in nature." *Davis*, 246 F.3d at 504. The form of the speech--a prayer--constitutes religious expression, which certainly can be of public concern. *See Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996). Nevertheless, the context of the prayer demonstrates that it was not of public concern, given that it concerned hostilities the plaintiffs had been having with Knight and their attempts to exorcize her of a purported demonic possession. *See id.* ("This circuit and other courts have defined public concern speech broadly to include almost *any* matter *other than* speech that relates to internal power struggles within the workplace.") (second emphasis added). This Court concludes that the statements made during the prayer meeting were not on a matter of public concern. *See Daniels*, 246 F.3d at 504 (holding that although personal religious conviction is matter of concern to many public members, it is not matter of public concern in constitutional sense).

Because the statements were not on a matter of public concern, Shatkin and Shifflett have not demonstrated a constitutional violation. So demonstrating being the first hurdle for a plaintiff running from a qualified-immunity defense, the Court concludes that Shatkin and Shifflett have not overcome that defense and, accordingly, cannot proceed on their free-speech claims against

Cole, Schultz, and Permenter individually.

### 3. Reasonableness of Investigation

Shatkin and Shifflett also complain that Cole, Schultz, and Permenter violated their constitutional free-speech rights by failing to conduct a reasonable investigation prior to terminating them. Because the Court has determined that their speech is not entitled to First Amendment protection, their complaints about Defendants' investigation also do not rise to a constitutional level. In any event, the Court concludes that even assuming Plaintiffs' speech is entitled to First Amendment protection, Plaintiffs have failed to demonstrate a constitutional violation regarding Defendants' investigation.

"Before an employer may justifiably discharge an employee on a belief that the employee's speech has caused or will cause significant disruption to the workplace, the employer must undertake a reasonable investigation of the facts to determine what the employee actually said." *Salge v. Edna Ind. Sch. Dist.*, 411 F. 3d 178, 192 (5th Cir. 2005) (emphasis omitted). When protected speech is potentially at issue, a

> manager must tread with a certain amount of care. This need not be the care with which trials, with their rules of evidence and procedure, are conducted. It should, however, be the care that a reasonable manager would use before making an employment decision--discharge, suspension, reprimand, or whatever else--of the sort involved in the particular case. . . .
> Of course, there will often be situations in which reasonable employers would disagree about who is to be

12

> believed, or how much investigation needs to be done, or how much evidence is needed to come to a particular conclusion. In those situations, many different courses of action will necessarily be reasonable. Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable.

*Waters v. Churchill*, 511 U.S. 661, 677-78 (1994). Plaintiffs' complaints regarding the investigation appear to be with Defendants' reliance upon Maples's version of the incident; the fact that they did not interview a janitorial employee, identified during discovery as Duc Nguyen, who apparently may have witnessed some of the prayer session; and the fact that the specific policies Plaintiffs were alleged to have violated were not discussed with them.

Contrary to Plaintiffs' contentions, however, Maples was not the only source upon which Defendants relied. Defendants also interviewed both plaintiffs prior to their termination. Defendants contend that at their interviews, Plaintiffs' recounting of the incident coincided largely with what Maples had relayed to them. Plaintiffs admitted to having conducted a prayer session immediately outside of Knight's cubicle and rubbing oil on the cubicle's wall because, according to Shatkin, Knight was demonically oppressed. After the interview, Plaintiffs received letters from Defendants setting out Defendants' intention to terminate Plaintiffs as a result of the incident; specifically naming the policies that Defendants believed Plaintiffs had violated; and requesting that Plaintiffs "[p]lease provide any

13

information that you believe will show that termination is not appropriate." (Defs.' App. at 3, 6.) Plaintiffs' responses did not specifically contest any of the facts giving rise to the conclusions Defendants had reached or object to their application of defendant UTA's policies, but instead reiterated that the prayer session had occurred after work, did not interfere with work activities and was done in a non-disruptive manner. (Defs.' App. at 8, 10.) Additionally, when Plaintiffs appealed, their appeal letters also provided no additional information regarding the incident in question or otherwise contesting Maples's version of events.

Even if Defendants' fact-finding or application of UTA's policies is ultimately determined to be in error, their investigation into the incident in question was constitutionally reasonable. They interviewed all participants in the prayer session before making a determination and then again sought, to no avail, any contrary information from Plaintiffs after making their decision. *See Salge*, 411 F.3d at 193 (noting that "we upheld as reasonable an employer's investigation of an employee's speech after (1) it received statements from three employees, (2) it obtained a supervisor's report stating that the supervisor believed that the plaintiff was lying, and (3) the plaintiff "fail[ed] to present *any* evidence in his own support even when explicitly invited to do so"). It is not surprising that they chose not to track down and interview Nguyen when they had already interviewed

14

all three participants in the prayer meeting who, in large respect, agreed about what had happened. As a result, the Court concludes that Plaintiffs have failed to demonstrate that Defendants' investigation was constitutionally unreasonable, and they are thus entitled to qualified immunity on this issue.

## C. FREE EXERCISE

Shatkin and Shifflett also allege that Cole, Schultz, and Permenter, by terminating their employment based on the prayer meeting, violated their First Amendment rights to the free exercise of their religion. The free-exercise clause requires government respect for religious beliefs and practices. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

After struggling with this issue, the Court concludes that it desires additional briefing from the parties. Plaintiffs' response brief discusses, at length, cases that are largely outside the employment context. Defendants' reply brief invokes the above-discussed balancing test from *Pickering*, 391 U.S. at 568, which it contends is also applicable to the free-exercise claims. The Court is inclined to agree. Plaintiffs's response brief wholly fails to address the balancing test at all, however, including regarding their free-exercise claims. Nevertheless, the Court is not yet persuaded, at least at this juncture of these proceedings, that the application of this balancing test, even in the qualified-immunity context, mandates a summary judgment in the individual defendants' favor.

## IV. CONCLUSION

For the foregoing reasons, Cole, Schultz, and Permenter are entitled to summary judgment against Shatkin's and Shifflett's free-speech claims brought against them individually, and their motion for summary judgment is PARTIALLY GRANTED in that respect.

If Plaintiffs persist in their desire to pursue their free-exercise claims against the individual defendants, they shall file a surreply to Defendants' reply brief within twenty days of the date of this order. Plaintiffs' surreply, which shall consist of no more than ten pages, shall address both the propriety of applying and the application of the *Pickering* balancing test to those claims. The individual defendants shall file a response of no more than ten pages to Plaintiffs' surreply, if any, within fifteen days of its filing.

SIGNED March 10, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE