IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EVELYNE M. SHATKIN and | § | |
| LINDA SHIFFLETT | § | |
| | § | |
| V. | § | ACTION NO. 4:06-CV-882-Y |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| ARLINGTON, et al. | § | |

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before this Court is defendant University of Texas at Arlington's Motion for Partial Summary Judgment (doc. # 83), filed October 15, 2009. After considering the motion, the response, and the reply, the Court DENIES the motion.

## I. BACKGROUND

Plaintiffs Evelyne M. Shatkin and Linda Shifflett worked for the University of Texas at Arlington ("UTA") as administrative assistants in the development office. Defendant Gary M. Cole was the head of Shatkin and Shifflett's department. Defendant Amy J. Schultz was Shatkin's immediate supervisor, and defendant Selma Permenter was Shifflett's immediate supervisor.

UTA had a written policy protecting employees' freedom of speech, expression, and assembly, which provided that UTA would not discriminate on the basis of an expressed religious viewpoint. (Pls.' App. 125.) Specifically, UTA allowed its employees to pray, talk about religious matters, express their beliefs in staff meetings, participate in Christmas celebrations, and have religious objects on their desks without requesting an accommodation. (UTA App. 55-56, 61, 81.)

In 2006, Shatkin, Shifflett, and Doug Maples, a co-worker, began discussing the personal difficulties that Maples was having with Evelyn Knight, another co-worker. (Pls.' App. 345.)

Previously, Maples had yelled at Knight in front of other co-workers that Knight was "a really mean person," making Knight cry. (Pls.' App. 29-30.) Maples's supervisor, Permenter, "counseled" him and gave him a "verbal warning." (Pls.' App. 7, 79.) Shatkin and Shifflett also had difficulty working with Knight: Shatkin and Knight had attended formal mediation with UTA's human-resources department in an attempt to resolve their personal conflicts, and Shifflett had been verbally reprimanded for repeatedly yelling at Knight. (UTA App. 42-43, 80.) As a result, Shatkin and Maples agreed that they would pray together about the situation. Maples told Shifflett about their plan to stay after work on March 3, a Friday, to pray for Knight.[1] (Pls.' App. 282.) Shatkin chose that date because she knew that Knight would be out of the office. (Pls.' App. 35, 339.)

Shatkin, Shifflett, and Maples met at 5:30 p.m. on March 3 at Knight's cubicle. Shatkin prayed and, according to her religious tradition, rubbed olive oil on the metal doorway to Knight's cubicle.[2] Shatkin stated that she "prayed for [Knight] to have peace, joy, deep joy." (Pls.' App. 332.) Maples stated that, although the prayer was not disruptive, Shatkin "started . . . chanting, her voice accelerated, it got very loud, it amplified in the office. It wasn't a normal tone, and she started chanting . . . I command you demons to leave [Knight], you vicious evil dogs get the hell out of here in the name of Jesus, get the hell out of [Knight]." (Pls.' App. 34-37, 40.) Shatkin and Shifflett contend, and Maples agreed in his deposition, that the oil left no permanent mark or otherwise damaged the cubicle.

---

[1]Maples denies that he knew about Shatkin's and Shifflett's planned meeting until they told him at 5:30 to join them. (Pls.' App. 32.)

[2]Shifflett believed that using the oil "invokes the presence of the Holy Spirit." (Pls.' App. at 266.) Shatkin used the oil "to dedicate that area to the sovereignty of God and for his blessing." (Pls.' App. at 326.)

Maples allegedly joined the ceremony by saying "amen" and "yes, Lord."[3] (Pls.' App. 294.) Shifflett said "amen." (Pls.' App. 41, 294.) Shatkin and Shifflett contend that they were not disruptive. (Pls.' App. 305, 343.) Although the prayer offended Maples, he did not tell Shatkin or Shifflett. (Pls.' App. 38.) Shatkin then told Shifflett and Maples that now that they had prayed for Knight, they should stop gossiping about her "to bring closure to this." (Pls.' App. 343.)

On March 7, Maples reported the episode to Permenter, his supervisor. (Pls.' App. 42.) Maples told Permenter that Shatkin and Shifflett "participated in this ritual and that there was chanting, loud prayer, and rubbing of oil on [Knight's] cubicle." (Pls.' App. 69.) Permenter, who earlier had noticed the oil on Knight's cubicle doorway, notified Schultz. (Pls.' App. 69, 72.) Permenter and Schultz decided that the matter should be reported to Cole. (Pls.' App. 75.)

On March 8, Cole, Permenter, and Schultz met with Shatkin and Shifflett about the prayer meeting. (Pls.' App. 348.) Shatkin and Shifflett confirmed that they had prayed for Knight after work. (Pls.' App. 224, 295.) Cole and Permenter assert that Shatkin and Shifflett explained that they had prayed for Knight because she was "demonically oppressed." (Pls.' App. 81, 224.) Cole told Shatkin and Shifflett that even though their intentions were good, their conduct on March 3 had been inappropriate. (Pls.' App. 225, 231, 294.) When Shatkin and Shifflett asked why Maples was not present, they assert that Cole would not answer and was disrespectful of their beliefs regarding prayer. (Pls.' App. 349-50; 2nd Am. Compl. 10 at ¶ 45.) Cole later stated that he objected "to the language that [Shatkin] used [in the prayer], the manner in which she misused university resources and entered someone's cubicle." (Pls.' App. 214.) He believed that "the nature, the manner that they're praying, what language they're using" determines whether the prayer constituted harassment. (Pls.' App. 214.)

---

[3]Maples denies saying anything. (Pls.' App. 37.)

The human-resources department conducted an investigation of the incident that same day and recommended that Shatkin and Shifflett be fired. (Pls.' App. 226.) Cole immediately gave Shatkin and Shifflett written notice that he intended to fire them because they "displayed conduct unbecoming a UT Arlington staff member, harassment of a fellow co-worker,[4] and blatant disregard for the property of the university." (UTA's App. 2-6.) Cole relied on provisions in UTA's regulations, which essentially refer to unacceptable employee conduct and protecting UTA's assets. Cole specifically stated that he did not consider Shatkin's or Shifflett's prior problems with Knight, but based the decision solely on the March 3 prayer. (Pls.' App. 237.)

On March 14, Shatkin wrote Cole requesting a religious accommodation "of my right to engage in brief prayer during non-work time in a non-disruptive manner." (UTA's App. 8.) Likewise, Shifflett requested an accommodation for "my sincerely held religious beliefs . . . to engage in a prayer time . . . in a non-disruptive manner and during non-work time." (UTA's App. 10.) The next day, Cole gave Shatkin and Shifflett letters reaffirming his decision to fire them because they had provided "no mitigating circumstances regarding your termination." (UTA's App. at 12-14.) On March 23, Shatkin and Shifflett appealed in writing to Cole, Schultz, and Permenter, wherein they requested reinstatement with back-pay and a public apology. (UTA's App. 17-20.) The following day, Schultz denied Shatkin's appeal, and Permenter denied Shifflett's appeal using the same language:

> As indicated in [Cole's] Intent to Terminate dated March 8, 2006, your behavior on March 3, 2006[,] was behavior unbecoming of a UT Arlington staff member. More specifically,

---

[4]UTA defined verbal harassment as "hostile or offensive speech, oral, written[,] or symbolic that . . .personally describes or is personally directed to one or more specific individuals; and . . . is sufficiently severe, pervasive[,] or persistent to create an objectively hostile environment that interferes with or diminishes the victim's ability to participate in or benefit from the services, activities[,] or privileges provided by [UTA]." However, UTA expressly provided that "an argument for or against the substance of any . . . religious. . . idea is not verbal harassment even if some listeners are offended by the argument or idea." (UTA App. 127.)

> praying, shouting and/or chanting over a co-worker[']s personal and professional belongings without her knowledge or consent constitutes harassment of a fellow co-worker. In addition, rubbing this co-worker's cubicle with oil is blatant disregard for university property, both of which are identified as behavior that is grounds for dismissal . . . .

(UTA's App. at 22, 26.) Approximately two months later, Cole for the first time informed Knight about the prayer. (Pls.' App. 421.)

After exhausting their administrative remedies, Shatkin and Shifflett filed suit against UTA's president, Cole, Schultz, and Permenter in their official capacities ("the individual defendants") and UTA for discrimination against them based on their religious beliefs, in violation of Title VII.[5] Specifically, Shatkin and Shifflett asserted that they were unlawfully fired (1) based on their religious beliefs and (2) without a requested reasonable accommodation. (2nd Am. Compl. 16 at ¶¶ 68, 69.) UTA now requests that partial summary judgment on Shatkin and Shifflett's Title VII claims be granted:

> Plaintiffs cannot establish that UTA discriminated against them on the basis of their religion. As an initial matter, to the extent that their claim is predicated on a failure to accommodate, it must fail because the undisputed facts demonstrate that Plaintiffs did not request accommodation *prior* to engaging in the conduct, as required by law. Further, even if they had requested such accommodation, UTA had no duty to accommodate harassing conduct aimed at a coworker.
>
> Nor can Plaintiffs demonstrate that UTA discharged them for exercising their religious beliefs or based on their gender or age[[6]] in violation of Title VII. The alleged comparator,

---

[5]Shatkin and Shifflett also raised claims for violations of their rights to freedom of speech and expression and their rights to the free exercise of their religion. (2nd Am. Compl. 17-22.) These claims, however, were raised solely against the individual defendants. On March 10, 2009, the Court granted the individual defendants' motion for summary judgment with respect to the free-speech claim. Still pending before the Court is the individual defendants' request for judgment as a matter of law regarding the free-exercise claim.

[6]Shatkin and Shifflett do not claim that UTA discriminated against them on the basis of their age or gender. (2nd Am. Compl. 16.) Further, UTA fails to argue further in their briefing either the purported age-discrimination or gender-discrimination claims. As a result, this Court, likewise, will not further address these matters.

> Doug Maples (male, age under 40), was not similarly situated. And the evidence is clear that UTA has asserted a valid, nondiscriminatory reason for its actions: Plaintiffs' violation of UTA's harassment policies.

(UTA's Summ. J. Br. 2.)

## II. APPLICABLE LAW

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not produce evidence showing the absence of an issue of fact with respect to an issue on which the opposing party bears the burden of proof, however. Rather, the movant need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the opposing party's claim. *See id.* at 323-25.

When the movant has carried its summary-judgment burden, the opposing party must go beyond the pleadings and by her own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also* Fed. R. Civ. P. 56(e)(2).

In making its determination on the motion, the Court must look at the full record in the case.

*See* FED. R. CIV. P. 56(c)(2); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

## B. TITLE VII

Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of that employee's religion. *See* 42 U.S.C.A. § 2000e-2(a)(1) (West 2003). "Religion" is an inclusive term as used in Title VII:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C.A. § 2000e(j) (West 2003). A prima-facie case of religious discrimination based on disparate treatment consists of four elements: (1) the individual was a member of a protected class, (2) the individual was qualified for the position, (3) the individual was subject to an adverse employment action, and (4) the individual was treated less favorably than others similarly situated.[7] *See Abarca*

---

[7]The parties' summary-judgment briefs include scant reference to Shatkin and Shifflett's claim as being based on disparate treatment. (UTA's Summ. J. Br. 19; Pls.' Resp. 49-52; UTA's Reply 10-11.) Shatkin and Shifflett's complaint alleges a Title VII claim solely for firing them on the basis of their religious beliefs without reasonably accommodating those beliefs. (2nd Am. Compl. 16.) *See generally Adeleke v. Comcast Cable Commc'n*, No. 3:05-CV-1720-G, 2006 WL 1377919, at *2 n.4 (N.D. Tex. May 18, 2006) (noting difference between disparate-treatment claim and claim of religious discrimination). However, this Court will treat the disparate-treatment allegation as properly raised.

*v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005)*; Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). In the summary-judgment context, a plaintiff's evidence regarding her prima-facie case of discrimination need only be evidence from which it can be inferred that the employer took adverse action against her on the basis of a proscribed criterion. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000). If the plaintiff establishes a prima-facie case, then a presumption of discrimination arises, and the burden shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for the adverse employment action.[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001). If the defendant meets its burden of production, then the presumption of intentional discrimination is rebutted and the burden of production shifts back to the plaintiff to show that the reason proffered by the defendant is merely a pretext[9] for religious discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Evans*, 246 F.3d at 350.

Although the *McDonnell-Douglas* burden-shifting model is generally applicable to Title VII claims of employment discrimination on the basis of religion, the elements of a prima-facie case are

---

[8]"It is important to note . . . that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[9]A plaintiff may show pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256-57. As the Supreme Court acknowledged, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient for the finder of fact to infer discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000). The Supreme Court has also made it clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

molded to fit the circumstances of the individual case. *See Rubinstein v. Adm'rs of Tulane*, 58 F. Supp. 2d 702, 710 (E.D. La. 1998). Thus, a plaintiff's prima-facie case regarding religious discrimination based on an alleged failure to accommodate consists of evidence that (1) she had a bona-fide, religious belief that conflicted with an employment requirement; (2) she informed her employer of this belief, and (3) she was fired for failing to comply with the conflicting employment requirement. *See Jenkins v. La., Through Dep't of Corrs.*, 874 F.2d 992, 995 (5th Cir. 1989); *see also Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). If the plaintiff meets this standard, the burden shifts to the defendant to show that it cannot reasonably accommodate the employee without incurring undue hardship. *See Jenkins*, 874 F.2d at 655; *see also* 42 U.S.C.A. § 2000e(j); *Berry*, 447 F.3d at 655. Undue hardship results if the employer, through accommodation, would incur more than a de-minimus cost. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 65 (1977); *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

## III. APPLICATION

### A. Prima-Facie Case of Religious Discrimination

#### 1. Disparate Treatment

Shatkin and Shifflett have raised material fact issues relative to their prima-facie case of religious discrimination based on disparate treatment. UTA does not dispute that Shatkin and Shifflett have met the first three elements of their prima-facie case; however, UTA argues that Shatkin and Shifflett have failed to show they were treated less favorably than others similarly situated. *See Okoye v. Univ. of Tex., Houston*, 245 F.3d 507, 512-13 (5th Cir. 2001). Shatkin and Shifflett rely on the fact that Maples, although a participant in the prayer, was not similarly fired or even disciplined. UTA asserts that Maples is not similarly situated to Shatkin and Shifflett because (1) Maples reported the

incident to his supervisor and (2) Maples previously had not been disciplined for prior conflicts with Knight. (UTA's Summ. J. Br. 21.)

To be similarly situated, the relevant circumstances must be nearly identical or of comparable seriousness. *See McDonnell Douglas*, 411 U.S. at 804; *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009); *Okoye*, 245 F.3d at 514. Here, Maples, Shatkin, and Shifflett were involved in the same incident. As such, they are similarly situated. *See Rohde v. K.O. Steel Castings, Inc.*, 649 F.2d 318, 322 (5th Cir. Unit A Aug. 1981) (holding prima-facie, disparate-treatment case shown through evidence employees involved in same offense but disciplined differently). S*ee generally Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 212 (5th Cir. 2004) (recognizing difference in similarity requirement between cases where comparators involved in same incident as plaintiff versus cases where comparators involved in similar incidents as plaintiff). Based on this precedent, this Court concludes that Shatkin's, Shifflett's, and Maples's involvement in the same incident, with different disciplinary results, raises a fact issue regarding whether Shatkin, Shifflett, and Maples were similarly situated.[10]

But even if this Court were to consider UTA's reasons for the differing treatment, the conclusion would be the same. Maples, Shatkin, and Shifflett had prior conflicts with Knight and, contrary to UTA's contention, all had been reprimanded for them. The fact that Maples and Shifflett were verbally reprimanded while Shatkin received a written reprimand does not result in Shatkin's and Shifflett's disciplinary records being so dissimilar from Maples's to warrant a disimilarity finding as a matter

[10]UTA assumes Maples was not involved because he asserted he was merely present and did not speak during the prayer. (Pls.' App. 34.) Even if presence were not enough to constitute involvement, Shifflett stated in her deposition that Maples verbally participated in the prayer, which raises a fact issue as to Maples's involvement. (Pls.' App. 294.) Further, although Cole stated that Shifflett told him Maples was not involved, Shifflett denied this and reaffirmed Maples's involvement. (Pls.' App. 209, 309.)

of law. Finally, Maples's reporting of the incident alone does not appear to be what resulted in the dissimilar treatment, for Cole admitted that if he had known Maples said "amen" during the prayer, he would have fired him as well.[11] (Pls.' App. 203.) Because UTA admits Maples's report would not have made a difference if he had verbally participated in the prayer, a fact issue is raised regarding whether Maples's whistleblowing, on its own, was sufficient to justify the differing treatment. *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2006) (holding hourly versus appointed employment designation insufficient to warrant differing treatment for similar misconduct).

2. Reasonable Accommodation

UTA does not dispute that Shatkin and Shifflett have met the first and third prongs of their prima-facie case claiming religious discrimination based upon UTA's failure to reasonably accommodate their beliefs. However, UTA vigorously protests that neither Shatkin nor Shifflett informed it of their religious beliefs that conflicted with the anti-harassment and property-damage policies. Indeed, UTA asserts that Shatkin and Shifflett were required to notify UTA of their need to pray over Knight's cubicle **before** they did it. (UTA's Summ. J. Br. 11-14.)

UTA might be correct when an employee's religious beliefs actually conflict with the employer's policies. But, this Court, frankly, cannot see how Shatkin's and Shifflett's prayer session required them to notify UTA of a conflict prior to engaging in the prayer. Shatkin and Shifflett intentionally

[11]Shatkin and Shifflett assert that this statement, along with Cole's statement that a prayer's content determines its acceptability, is direct evidence of discrimination, which obviates any examination of the prima-facie case or the burden-shifting framework. (Pls.' Resp. 42-46.) That may be so, but because this Court concludes that Shatkin and Shifflett have successfully avoided summary judgment even under the circumstantial-evidence paradigm, this argument need not be addressed.

prayed after work hours when they knew Knight would not be there.[12] Knight did not even learn about the prayer session until two months later when she was informed of it by Cole. Can a prayer for someone constitute harassment when the alleged object of the prayer is unaware of it? This Court suspects not. Particularly where UTA's own nondiscrimination policy permits Shatkin's and Shifflett's expressions of their religion, even if offensive to others. (UTA App. 127.)

Indeed, when Maples and Shatkin previously yelled at Knight, with Maples even making Knight cry, UTA did not fire them. Remarkably, Cole stated that standing outside Knight's cubicle and praying for her in her absence was "more egregious" than making Knight cry. (Pls.' App. 205.) Permenter did not believe that yelling at Knight that she was mean constituted harassment, but did consider the prayer to be harassment. (Pls.' App. 73, 79.) This even though Knight was not aware the prayer had occurred. At the least, Plaintiffs have raised fact issues regarding whether the prayer session constituted harassment of Knight and thus conflicted with UTA's anti-harassment policy such that they needed to notify UTA prior to engaging in the prayer session.

Further, there appears to have been no conflict with the property-damage policy. There is scant summary-judgment evidence that any property was damaged or misused during the meeting. Cole admitted that the cubicle was not damaged by the oil, but contends that it was misused when Shatkin and Shifflett entered Knight's cubicle and rubbed oil on the doorway to the cubicle. (Pls.' App. 202.) There is no other evidence indicating that the cubicle was damaged, and Shatkin and Shifflett deny actually entering Knight's cubicle.

---

[12]UTA contends that holding the prayer meeting after work hours and in Knight's absence supports its argument that Shatkin and Shifflett knew their actions would be disruptive and objectionable. (UTA's Reply 6.) This Court is not so convinced. Shatkin and Shifflett just as easily could have been attempting to perform a permissible activity with the least amount of inconvenience to their fellow employees and employer.

In the absence of any conflict with the policies, Shatkin and Shifflett were not required to notify UTA that they planned to conduct their prayer vigil.[13] Shatkin and Shifflett requested an accommodation as soon as they were told their prayer conflicted with UTA's property and harassment policies. Thus, Shatkin and Shifflett have presented sufficient evidence to demonstrate a prima-facie case of religious discrimination based on an alleged failure to accommodate.

### B. Burden Shifting Framework

#### 1. Legitimate, Nondiscriminatory Reason/Pretext

As discussed above, Shatkin and Shifflett have produced evidence from which it can be inferred that their employer took adverse action against them on the basis of their religion and thus have established, for summary-judgment purposes, a prima-facie case of religious discrimination based on disparate treatment. This Court now turns to whether UTA has articulated a legitimate, nondiscriminatory reason for firing Shatkin and Shifflett. As stated above, UTA stated such a reason: misuse of government property and harassment.

Thus, the burden of production now shifts back to Shatkin and Shifflett to show that these reasons were mere pretext for religious discrimination. Shatkin and Shifflett have done so. (Pls.' Resp. 54.) It is disputed whether Shatkin and Shifflett ever entered Knight's cubicle, which undercuts UTA's argument that they misused government property. And it is undisputed that the oil did not damage the cubicle. Likewise, UTA's policy that religious speech cannot constitute harassment, even if offensive to others, and its policy expressly allowing prayer in the workplace weaken their argument that they fired Shatkin and Shifflett for harassing Knight through their prayer, particularly

[13]Indeed, the prayer session seems to be perfectly acceptable under UTA's policies prohibiting discrimination on the basis of an expressed religious viewpoint and permitting its employees to pray without requesting an accommodation.

when Knight was unaware of the prayer session. Plaintiffs have presented sufficient evidence raising material fact issues regarding whether UTA's stated reasons for firing Shatkin and Shifflett were merely a pretext for firing them on the basis of their religious beliefs. Thus, summary judgment is unwarranted.

2. Reasonable Accommodation/Undue Hardship

Because Shatkin and Shifflett have met their burden to produce sufficient evidence demonstrating a prima-facie case of religious discrimination based on a failure to accommodate, the burden of production shifts to UTA to present evidence tending to show that it could not reasonably accommodate Shatkin and Shifflett without incurring undue hardship. UTA contends that because Shatkin's and Shifflett's prayer imposed personally and directly on Knight, it could not accommodate Shatkin and Shifflett in the interest of "preventing the harassment of employees and the escalation of tensions in the office." (UTA's Summ. J. Br. 16.)

As UTA points out, an employer is not required to accommodate one employee's religious beliefs if the accommodation infringes on the rights of fellow employees. *See Bynum v. Fort Worth Indep. Sch. Dist.*, 41 F. Supp. 2d 641, 653 (N.D. Tex. 1999). But Knight was not present during the prayer and only learned of it months later, and the prayer itself did not qualify as harassment under UTA's policies. Even though this Court acknowledges that workplace harmony is a laudable goal, Cole stated that he based his decision solely on the March 3 prayer and not on Shatkin's and Shifflett's prior, inharmonious relationship with Knight. This undercuts UTA's harmony rationale. Shatkin's and Shifflett's conduct does not rise to the level of the conduct displayed by the employees in the cases cited by UTA. (UTA's Summ. J. Br. 14-15, 18.) Further, Cole stated that UTA's duty to accommodate Shatkin and Shifflett would depend "on the type of prayer" and whether the prayer "was offensive." (Pls.' App. 228.) This focuses on the belief itself rather than on whether the

accommodation would result in an undue hardship to UTA, which is impermissible. *See* Kent Greenawalt, *Title VII and Religious Liberty*, 33 LOY. U. CHI. L.J. 1, 22-28 (2001); Julia Spoor, Note, *Go Tell it on The Mountain, But Keep it Out of The Office: Religious Harassment in The Workplace*, 31 VAL. U. L. REV. 971, 985-90 (1997). Shatkin and Shifflett's arguments regarding accommodation are persuasive. (Pls.' Resp. 35-41.) Accordingly, the Court concludes that there are material fact issues precluding summary judgment on the issue of undue hardship.

## III. CONCLUSION

Shatkin and Shifflett have raised material fact issues regarding their Title VII claim that they were unlawfully fired on the basis of their religious beliefs as evidenced by the differing treatment they received from others similarly situated and by UTA's alleged failure to accommodate their beliefs. These material fact issues mandate that this Court deny UTA's motion for partial summary judgment.

SIGNED July 9, 2010.

Terry R. Means

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE